418 A.2d 589

**COMMONWEALTH of Pennsylvania**

v.

**Bobby HARRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed Feb. 8, 1980.

20

Ronald F. O'Driscoll, Assistant Public Defender, Norristown, for appellant.

James A. Cunningham, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before VAN der VOORT, HESTER and WIEAND, JJ.

VAN der VOORT, Judge:

Appellant has been found guilty by a jury of rape, aggravated assault, terroristic threats, recklessly endangering another person and possession of instruments of crime with intent. This case arises on appeal from the judgment of sentence which followed conviction.

The testimony of the victim, Lillian Hutchinson, a black woman, 47 years of age, was uncontradicted and in large part corroborated. In the early morning hours of September 18, 1976, she was awakened from sleep at her home in Philadelphia by a knock on the door. Dressed only in her nightgown, she went to the door but did not open it until she was informed by a young female, speaking through the door, that her son was hurt and required her immediate help. She then opened the door and at that moment appellant, who until then had been hidden, entered the house and shoved a gun into Mrs. Hutchinson's mouth, warning her to keep quiet. Appellant grabbed Mrs. Hutchinson by the hair, dragged her out of the door and into a white car with a maroon top. She was refused an opportunity to put on any clothing. She was in her menstrual period and bleeding. Inside the car were three young females.

The car was then driven from Philadelphia to the Norristown area in Montgomery County. During the ride, one of the females who was in the rear seat with Mrs. Hutchinson held a knife to her chest. Mrs. Hutchinson asked why she was being kidnapped and the appellant told her that he was going to punish her because her son had double-crossed him and taken his money. In the course of this conversation, the appellant identified himself by name as Bobby Harris.

After driving for several hours, the appellant stopped the automobile near a deserted field in the Norristown area of Montgomery County and proceeded to drag the victim forcibly from the car. She was first beaten by the appellant and his female companions. Then appellant attempted to shoot her several times, but his gun consistently misfired. Incensed, the appellant raped the victim, then stabbed her three times, in the chest, in the side and in the vagina. When Mrs. Hutchinson attempted to rise to her feet, appellant picked up a rock, threw it at her and screamed, "Bitch, you are not dead yet."

Ultimately, the appellant rejoined his female companions and left Mrs. Hutchinson badly wounded. However, she managed to get to nearby Highway 309 where she received help from a passing tow truck operator who observed her standing on the shoulder of the road, completely naked. The driver gave Mrs. Hutchinson a towel for cover, placed her in the cab of his truck and took her to the hospital. As she was climbing into the truck, she noticed appellant standing near the highway fence in weeds up to his waist, pointing a gun at her. She asked the driver to observe appellant, which he did before the appellant disappeared from sight into the woods. At the trial, the driver corroborated Mrs. Hutchinson's identification of the appellant.

Appellant was tried in the Court of Common Pleas of Philadelphia County on December 2, 1976 and convicted on charges of criminal conspiracy, kidnapping, burglary and possession of an instrument of crime with intent.

On February 9, 1977, he was convicted in the Court of Common Pleas of Montgomery County (the case here under review) of rape, aggravated assault, terroristic threats, recklessly endangering another person and possession of an instrument of crime with intent. Charges of kidnapping and criminal conspiracy were quashed prior to trial because of the earlier conviction on these same charges in the Philadelphia Court.

Appellant appeals his conviction upon four grounds: (1) that the charge of terroristic threats should have been

quashed because of the earlier conviction in Philadelphia County on charges which appellant contends were for substantially similar offenses arising from the same criminal episode; (2) that the evidence of blood stains, found by an examination of appellant's car, should have been suppressed because the search warrant for the examination of the car was too general in its description of the items sought; (3) that the trial court failed to make findings of fact and conclusions of law with respect to a suppression hearing which preceded the trial; and (4) that trial counsel was ineffective. There is no merit in any of these contentions.

Appellant cites 18 Pa.C.S.A., Section 110, as authority for his argument that the charges of terroristic threats should have been quashed because of the earlier convictions in Philadelphia County arising from this episode. He argues that the prosecution for terroristic threats should have been barred in Montgomery County even though the prosecution in Philadelphia was for different offenses because, the argument runs, he could have been convicted of terroristic threats in the Philadelphia prosecution. He argues that the prosecution for terroristic threats in Montgomery County places him in double jeopardy and that the burden was on the Commonwealth to prosecute for all offenses arising from one criminal episode at the first prosecution.

The terroristic threats for which appellant was convicted at his second trial all occurred in Montgomery County at the time Mrs. Hutchinson was forcibly pulled from appellant's car into a nearby woods and threatened repeatedly with death, while appellant attempted to shoot her and then raped and stabbed her.

He was not charged with making terroristic threats in Philadelphia County and there is no evidence in this record that he made such threats in that county; but if he did, they were not the threats for which he was tried in Montgomery County.

The mandate of Section 110 of the Criminal Code that there cannot be a subsequent prosecution for any offense for

which a defendant could have been convicted on the first prosecution carries the statutory qualification that the offenses must have been "within the jurisdiction of a single court." The Court of Common Pleas of Philadelphia County had no jurisdiction to try the appellant on the charge of making terroristic threats in Montgomery County: *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972); *Commonwealth v. Mull*, 315 Pa. 424, 426, 175 A. 481 (1934).

None of this roadside episode would have been evidence to convict appellant of terroristic threats in the earlier Philadelphia trial because it occurred in Montgomery County. There is no way that appellant could have been tried for all of these crimes in one trial. Neither harassment nor double jeopardy was involved in subjecting appellant to trial in both counties, and in placing the charge of terroristic threats in the Montgomery County case.

■ Appellant's next contention is that the search warrant for his car was defective and that the evidence obtained from it (blood stains) should have been suppressed. The challenge to the warrant is that the affidavit in support of its issuance was too general in its description of the evidence sought. It is stated in the supporting affidavit that "I further believe that other evidence, such as semen and pubic hairs are present in this auto and request this warrant so that this evidence may be recovered." Appellant's argument is that "the search warrant fails to adequately specify what is being sought aside from 'other evidence'". He makes this argument only by ignoring the specification which immediately follows in the quoted sentence. Furthermore, the warrant itself names "blood stains" as another item of evidence to be searched for and it was this evidence which was found. Both the warrant and the supporting affidavit were precise in naming what was sought by the search warrant and quite sufficient to sustain the legality of the warrant.

■ The next contention is that the case should be remanded for a further evidentiary hearing because of the

failure of the trial court to make findings of fact and conclusions of law with respect to a suppression hearing which preceded the trial, as directed by Rule 323(i) of the Pennsylvania Rules of Criminal Procedure. The purpose of Rule 323(i) is to insure a meaningful appellate review of the lower court's decision. While it is true that formal findings of fact and conclusions of law were not made, the Opinion of the trial court in support of its Order reviews quite thoroughly both the facts of the case and the applicable law. Formal findings and conclusions would tell us no more than we already know.

The only issue raised in the suppression hearing which has been carried to us on appeal relates to the admissibility of evidence of blood stains obtained as a result of the search of the appellant's automobile. The challenge to the adequacy of the warrant which authorized the search (and heretofore discussed) goes to its specificity, which can be determined from the four corners of the document without the need for findings of fact and conclusions of law.

If we were to remand this case to the trial court for the purpose of obtaining findings of fact and conclusions of law on the suppression hearing, all that would be achieved would be delay.

■ Appellant's final argument is that his trial counsel was ineffective, a contention that is becoming increasingly boiler plate in criminal appeals. There is no presumption that counsel was ineffective simply because he lost the case; quite possibly it was lost on its merits. Nor is 20–20 hindsight a test of ineffectiveness. Trial counsel was appellant's personal choice, both in the trial of this case and in his Philadelphia trial which preceded it.

■ We are instructed by *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349 (1967) that counsel's assistance is to be deemed constitutionally effective if the course of action followed by him had some reasonable basis designed to effectuate his client's interests.

Appellant advances five reasons why he now believes that his counsel was ineffective, but three of them are contradict-

ed by the record. The assertion that trial counsel failed to file post-verdict motions finds its answer in the record which shows that he indeed filed such motions, although he was dismissed by appellant before they could be argued. Likewise, the contention that trial counsel failed to challenge the constitutionality of the charge of terroristic threats on the ground of vagueness is answered by the record which shows that trial counsel formally moved to quash the charge of terroristic threats on this very issue of vagueness. And finally, appellant's assertion that trial counsel should have advanced the argument that conviction on the charge of terroristic threats in Montgomery County subjected appellant to double jeopardy is answered by reading the record of the suppression hearing which shows that very argument to have been advanced by appellant's trial counsel.

█ The two remaining criticisms of trial counsel are also without merit. It is first contended that counsel neglected to request a jury charge on the doctrine of lesser included offenses. While it is well established that a defendant may be convicted of a lesser included offense, it is equally clear that if, under the evidence, a defendant must either be guilty of the grade of offense charged or entitled to an acquittal, the jury need not, indeed should not be instructed as to the lower grades to which the evidence does not relate. Conviction of a lesser included offense should not be authorized by the court's charge unless there is a rational basis in the evidence for the jury to find that a defendant, while guilty, was not guilty of the higher offense charged: *Commonwealth v. Melnyczenko*, 238 Pa.Super. 203, 207–208, 358 A.2d 98 (1976).

█ The uncontradicted testimony of the victim in this case indicated that she had received multiple stab wounds, had been raped and beaten and had a stone thrown at her with intent to kill. Her wounds were extremely serious and medical testimony was to the effect that it was doubtful for a time that she would live. Once the jury satisfied itself that the appellant was the assailant, it would have had no rational basis for determining that the appellant had com-

mitted a simple assault rather than an aggravated one. To have given the jury such an alternative would have been most inappropriate. Consequently, counsel was under no duty to seek to have the charge amplified in this respect.

Also, it may well have been in counsel's mind that to have the court explain the distinction between an aggravated assault and a simple assault would simply have emphasized the grievous nature of the appellant's assault.

■ The final claim of ineffectiveness of trial counsel is that counsel neglected to request a jury charge that the Commonwealth had the burden of proving beyond a reasonable doubt every essential element of the crimes charged. Such a charge would be granted today in view of the ruling in *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977). However, *Bishop* was decided on April 28, 1977, some two months after appellant's trial. Trial counsel is not required to be clairvoyant and cannot be deemed to have been ineffective for failure to anticipate a future development in the law.

On its merits, the trial judge's charge on the burden of proof was adequate without further elaboration. The jury was advised that the appellant was entitled to the presumption of innocence, that the Commonwealth's burden was to prove the appellant guilty beyond a reasonable doubt and that this was a "very heavy burden". A reasonable doubt was identified as a substantial doubt.

Appellant concedes that the court's charge on the Commonwealth's burden of proof was a correct statement of law and that the court adequately defined the elements of the offenses charged. The jury was instructed as to the requisite elements of the crimes of rape, aggravated assault, terroristic threats, recklessly endangering another person and possession of an instrument of crime with intent. Appellant does not quarrel with the charge as delivered, but asserts that the additional instructions should have been sought because of the decision in *Bishop*, supra. The further instruction, if granted, would have added nothing of significance to the charge as delivered. Indeed, trial counsel could

well have reasoned that it was not in his client's interest to review again the components of the aggressions against the victim, a review that would only have emphasized and belabored the factual atrocity.

The trial court mentions still another reason why it would not have been in appellant's best interest to ask for this elaboration of the burden of proving guilt beyond a reasonable doubt. The court points out that appellant's trial counsel, in his closing remarks to the jury, gave his own interpretation of what constituted a reasonable doubt which involved a much higher standard than the law provides. A supplemental charge by the trial judge on burden of proof, as now urged, would probably have disclosed the discrepancy. In the opinion of the trial judge, the decision of trial counsel to let well enough alone was a competent decision. We agree.

The appellant's conviction does not reflect on the quality of counsel's representation but rather upon the shocking conduct of the appellant, disclosed in the testimony of the victim.

Affirmed.

WIEAND, J., concurs in the result.